Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and its honorable court. Good morning. Welcome to the Fifth Circuit. And for whatever reason, we are allegedly technically assigned to the Enbank courtroom in New Orleans, but I expect none of us are there. We have two cases this morning, but we're going to start with this group. Um, both of you in Texas as we speak, I got some feeling that Ms. Keller is. Yes, your honor. Ms. Brodbeck, you're not quite as clear in your location. No, I am in Austin, Texas, your honor. I see. The first case is Jesus Jimenez v. Michael Butcher et al. We'll hear from Ms. Keller. Your honor, may it please the court. I'd like to focus on three issues this morning. The court's been fully briefed on the facts, and it's a very complicated procedural history. It's been up to the court once already gone back down. Now we're up the second time. But the three points that I think kind of synthesize the problems with this case is first, the district court made a mistake in how it analyzed the diligence element. And what it did was it failed to analyze the totality of the circumstances and tried to parcel out each individual action or inaction. The second issue error is the district court made a mistake and did not follow the mandate of this court on remand, where this court instructed that the district court is to either take as true the allegations made by Mr. Jimenez or to hold an evidentiary hearing to challenge the credibility of those allegations. The district court did not hold a hearing, but also if you read the analysis in the order by the district court, it did consistently challenge the credibility and the veracity of Mr. Jimenez's allegations. And then the third point is that the analysis by the district court when analyzing the diligence factor amounts to nullifying the section 2244 statutory tolling period. And what I mean by that is the congressional mandate is that during the time the state petition is pending. So for the 12, however long the state petition is pending, that period of time is tolled. But what the district court did in this case is it went back and looked at and questioned and criticized Mr. Jimenez for what he did or did not do during that congressionally allowed tolled period. And so to harmonize the equitable tolling doctrine with the 2244 statutory tolling doctrine or tolling statute, the court should not take the district court's analysis and adopt it. Instead, the court should look at the totality of the circumstances. What did Mr. Jimenez do and not do instead of focusing on what did he do during the interim period while the state petition was pending? So you say that, Miss Keller, but I think we have case law. We'll have to weave it all together for me. Oh, that says we look at each of these blocks of time separately, and there must we consider the diligence of each stage, the pre-state habeas petition time period, the habeas petition pending period, and then the time that's left after the state court has ruled. I believe that's our case law. And so I'm not quite sure how we ignore any part of that. And to the extent, for example, that Mr. Jimenez had not been diligent, I'm not saying that's the situation, before the state petition was filed, that goes into the overall analysis of how that affected what little time he had left afterwards. I mean, is that a fair assessment of what our case law is? And if not, tell me why not. And if it is, address that. Judge Southwick, it is a fair assessment of this court's case law that all three, so pre, pending, and post, should all be looked at. But what the district court in this case did was really focus on and almost use the state tolling period as a trump card. And because when you look at the pre-writ period and the post-writ period, you see nothing but actions by Mr. Jimenez. In fact, I think he was such a pain to his court counsel that that was part of the reason that the counsel quit. But what was the center? What was the linchpin of the district court's diligence analysis was the pending writ period. And the focus was on what did he do and what could he have done during that. And by taking that and saying that is the only important part, and trumping that part over what he did before and after, it ends up nullifying section 2244, which says he is congressionally allowed that period of time. Congress has spoken. And so in the way that the district court chose to analyze the diligence factor has, in effect, in my opinion, usurped that pending period and made it the sole issue. Wait a minute now. I understand you say that during that 900 days, 960 days, that we cannot even consider the absence of any action in pursuing his claims? I mean, 960 days, and he really, I think, doesn't have any contact with his lawyer and has minimal kind of contact with the court itself. And all of that can be anything. I don't see how that would, well, we cannot consider that in terms of diligence, because if he had done that, and if he had been diligent, we assume that he would have been much more on top of this case, that he would have had the filings that had been made in the state court that ultimately were not returned to him until about three days before the statute told, the statute told, or it wasn't told, but the statute blocked his case. So I don't see why that period of time, if he did nothing in that entire period of time, indicates any kind of diligence or can, in fact, it would indicate just the opposite, that is the lack of diligence during that period of time. He didn't have any interest in this case for 900 days, and that's diligence? I don't know. Two answers, Judge Jolly, to the first, the procedural aspect of it. It's the district court's complete disregard of the pre- and post-diligence efforts and using the pending period of time as the sole factor in the analysis. That's the procedural part that I'm complaining about. The second is the substantive part. There is evidence in the record that Mr. Jimenez gave all of his records to his counsel, and I can kind of give some anecdotal evidence of this. I've been a CJA counsel for 20 years, and the inmates are given one copy of the record, and that's paid for during the direct appeal. After that, that is their only copy, and when you are appointed to a case or you're hired on a case, I can promise you the first thing you get is a packet of that record with the inmates' notations, and that is pretty much all he has. During this period of time that the state writ was pending, it is undisputed that he had given those records to his state habeas counsel, and he was not giving them back. He gave all of his records. When did he ask for them back? In other words, his state counsel had no use for the for the period of time of his state petition. Just as this is another anecdotal answer, Your Honor, I would have kept the inmates' records throughout the pendency of the period because at the very end is when I would be sending the packet back to the inmate, and what I can attest to is in the pre-writ period, there is notation after notation, and it's all discussed in the briefing of Mr. Jimenez saying, can you send me my records back? Are you doing this? Are you doing that? In fact, he pestered so many times in the pre-writ period about the records, about the copies of the files. I think that's what led to his writ lawyer quitting, so I think it's undisputed in the record. Which lawyer are we talking about now that quit? The first state habeas law. Yes, Your Honor. And in that, Your Honor, if I could just go through that. Does that have to do with the question before us, or at least it seems to me is, what caused his failure to meet the time targets of filing this federal petition? And all of this did not amount, the cause of it, it seems to me, is he didn't have his, the most direct cause of, or the extraordinary circumstances that must have some causal connection to the failure to meet the time targets, was he did not have the record before him that he had in the state court, that he'd filed in the state court. And he had 900 days in which the to ask for, to at least show some interest in this case, and he didn't show any. That is, so I mean, although that may be the cause, or the preliminary, that may be the extraordinary circumstance that caused the failure of him to file, of his, of his sailing to file timely, that resulted from the lack of any diligence in 960 days to ever try to get his records back, to show any interest in this case, and to even communicate with his lawyer. Your Honor, if I could urge the court to consider how Mr. Jimenez's correspondence with his first writ lawyer and his second writ lawyer may have colored his decisions during the pending period. Not to communicate with the other's lawyer for 900 days? Well, let's, let's, let's talk about, I can, I can just tell you from, from what I read in the record, he pestered the heck out of his first lawyer and was shut down for that. And so that was 900 days earlier. Yeah. So why didn't he, why didn't he continue to persist these other lawyers? Well, that's, you know, I mean, I don't understand the argument of his persistence of his first lawyers and his complete and deadly silence with respect to the lawyer that is really relevant here is connected. Perhaps, perhaps, well, first of all, I think the, the treatment by his first writ lawyer colored the way that he approached his second lawyer, and you saw less persistence. I think it was for a reason, but perhaps we can look at it in a different way. All Mr. Jimenez is short is 34 days. So if you look at the different, the three periods of time, the pre-writ period, the pending writ period, and the post-writ period, for many, many months, the period of time, 34 days was lost based on his reliance on his counsel, telling him I'm working on nothing more than your writ. Your, your record is 31, is 31 volumes long. There's so many issues. There's so many things I need to do for seven and a half months. He relied on his first writ counsel. He, he was seven and a half months were taken from him and were taken from the period of time that he was allowed this to be told. Is the extraordinary circumstance that prevented his filing timely? And that is, he had, if he had had his, if he had had his record that the other lawyer, that the second lawyer, his state habeas final lawyer, didn't send to him until three days before the, before the filing time. If he had had that, there would be no extraordinary circumstance that would have precluded his filing. And why did that occur? It occurred because he had 900 days and didn't do anything about his case. So the extraordinary circumstance that might have excused his failure to file timely is negated by the lack of diligence in 900 days to doing anything about his case. That's the way I would look at it. I think that's how the district court looked at it too, because what I read in the opinion in the order was a pure focus on the pending writ period. And what I'm asking the court to do is to consider that the district court should have also included within the analysis, what happened to Mr. Jimenez in the pre-writ period and what happened to Mr. Jimenez during the post-writ period. And during both of those periods of time, he was denied way more than 35 days, which is all he was short. Ms. Keller, let me ask you a factual question. There is in the record a statement, a letter, I guess, from Jimenez involving his state writ lawyer. I have written you multiple letters. However, you have failed to respond back. It doesn't seem to me we know a lot about what was going on with him, that he was trying to communicate. You seem to be accepting Judge Jolly's factual position of a lack of much activity. What do we know? And if you know something about the quote I just gave you, tell me what that's about. But what do we know and what do we potentially not know on this record about what's going on then? Your Honor, I do not accept the Honorable Judge Jolly, although Judge Jolly is going to tell me what he wants it to be. I'm not aware that he made any such communication. He may have. Well, that's what I'm asking Ms. Keller to tell us about that. I went back, just this morning, I went back through the record to try to find specific letters that were written, because remember, he did attach 300 pages of exhibits in the supplemental petition, to try to find if any of those letters fell within the pending period. I could not find any, but I did find the statement, Your Honor, that you're talking about within his petition saying, I have asked you several times and written you multiple letters about the writ and you have not responded. That, if taken as true, which was required to be done by the district court, should at least so show some evidence of participation during the pending period. Tell me, I'm not quite understanding you, what you found. You found, you didn't find any evidence of the letters, but you found a statement that he's, did he send that statement to his lawyer? Is that what, is that a communication with the lawyer or is that just something you had sent several letters and communications with his lawyer? That's in his federal petition. Yes, but he did not attach, like he did on some of the other situations, he attached the letters, but he did make a sworn declaration that he had communicated during the pending period. It just wasn't, didn't appear to be as substantially corroborated by the letters as the pre and the government filed a supplemental letter of authorities and I believe it was the Diggs case, a recent case. What I'd asked this court to look at instead of the Diggs case is to look at the case cited within the Diggs case, which is the Umana case. And in the Umana case, I think that set of facts is much closer to our case than the Diggs case. The Diggs case was the recent letter that the government sent it and it's a recent case that came out. Judge Costa, I hope I'm saying your last name right, your honor, was on that opinion as well as on him and his number one and I think probably knows the facts better than all of us here because he's handled this case before, but the Umana case that is referenced in the Diggs case is much more factually consistent with many different factors in the analysis being looked at by the district court and what... Ms. Keller, your time is up. You can look at the case the extent my colleagues want to and I will as well. Well, you'll have some time for rebuttal. Ms. Brodbeck, you've been chomping at the bit, no doubt. Go ahead. Thank you, your honor. May it please the court. The district court did not abuse its discretion when it denied equitable tolling because Mr. Jimenez has not met this narrow exception. His case is not rare and extraordinary. He lost seven and a half months, but he lost seven and a half months out of three and a half years. That's from the final judgment date to the last day in his deadline. He furthermore has not shown to be diligent. First, his state application was pending over two and a half years. This court to think ahead and contemplate what his federal attack would be. He had over two years to determine AEDPA's procedures, to calculate its one-year limitations, and over two years to take advantage of TDCJ's law library policy. Well, if it's true that he had written his lawyers many times and they had been the lawyer, I believe his name is Ellison, is that... Yes, yes, your honor. Ellison. If he had written him many times and he had not responded in that period of time, that seems to mitigate any kind of blame that you could put on him for that period of time. Yes, your honor. I do believe that the record does have some letters that Mr. Jimenez had and provided to the district court. Well, first, his signature is on the state habeas application. He had to swear to the truthfulness and accuracy. He signed and dated that seven days before it was filed, so he knew what his claims were. But the letters that he provided to the district court, one was dated about a month after the application was filed. That's in appellate record 919 through page 922. He is expressing a discontent with the claims that Mr. Ellison raised, and he also complained about not getting notice until a month after the application was filed. He then followed that up in August of 2011, where he wrote Ellison and stated, I can't find a copy of my filed state writ. So at some point he did have a copy of his filed state writ, and then he asked Ellison, did I send it back? From that point in August of 2011, all the way to February of 2014, when the CCA denied relief, there is nothing from Mr. Jimenez. Did Ellison respond to his request for the record, return of the record? The record is silent as to that. So again, the district court followed this court's remand order. It allowed Mr. Jimenez to file a reply, which he did, and he included all of these documents, and it took everything specifically alleged, not conclusory allegations that he repeatedly asked, and then he asked after the CCA denied relief. It took these specific allegations that he wrote in August of 2011, where he alluded to the fact that he had a copy of the state habeas application and didn't specifically ask for another copy. He specifically asked for another copy over two years later after the CCA had denied relief. And he's also imputed to know under Ott V. Johnson that once that CCA denied relief, he had 43 days remaining, about a month and a half, that clock started ticking the minute the CCA denied relief. Under Ott V. Johnson, he needs to act swiftly. He needs to hit the ground running. It seems he did act fairly swiftly after that, did he not? Yes, Your Honor, but... Immediately asked his lawyer to get the record and that sort of thing? Yes, Your Honor. It is worth noting that Mr. Ellison did try to withdraw while the state application was pending, but he was diligent in responding to Mr. Ellison's specific request. So... Just a minute, Ms. Brodbeck, why do you say that? We at least have record entry on his petition that I was discussing, or Ms. Keller pointed out to us, just the opposite, that he had written the state habeas council, at least he's quoting one of his letters saying, you're not going to respond to my letter. So it seems to me there's at least some ambiguity. Did in fact a menace frequently contact, whatever that might mean, was Ellison, did he shut down just like the federal habeas council did because he was tired of this guy? Don't we really not know that much about that other than there's the assertion, which Ms. Keller says we need to take us through in this petition at this point, and you can tell me if that's right or not, that he says I wrote you quoting his letter to his lawyer and you haven't been responding. What do you make of that? Well, I do know the district court wouldn't abuse its discretion to disregard conclusory or vague statements like I wrote you multiple times. What it did have was a specific statement. He's not stating this in a letter to my lawyer, and that's what I told him. I've written you several times. I don't know if that's conclusory. That's a statement of fact. Well, we don't know when he wrote. He could have been writing multiple times after the CCA denied relief, and Mr. Ellison didn't respond until about two weeks later. He did have multiple letters after the CCA denied relief. I believe there were two or three before Mr. Ellison was able to respond, so we don't know if Mr. Jimenez means that or if he did write multiple letters. What we do know is we have a specific date of August 2011 where he alleges that he has a copy of the state habeas application. These three documents, the state and the three letters that he wrote to Ellison, it established with the district court three things. First, that Mr. Jimenez knew what his state habeas claims were. Second, that he knew when the state habeas application was filed because he had a copy at some point, and third, if he really did need another copy, he should be more diligent than waiting from August 2011 all the way to and not ask for another copy. It would be reasonable to assume possibly that Mr. Ellison did write back and his mail got lost or you have a middleman with TDCJ. It happens quite often. It's not abnormal. Yes. Why do you say it's sort of something that is fatal in this case that he didn't have another copy ready to go? It seems to me, getting back to what Ms. Keller said, it's not in the record, whatever, but the opposite isn't in the record either. How many copies of this are around? Who's going to pay for the copies? That the lawyer, state habeas lawyer, it's not unlikely would keep it. And for him to anticipate that it would take a month to get a copy, it ought to come when the lawyer notified him of the denial of his writ would be another reasonable thing for him to assume. I'm positing that. And as soon as his state writ is denied, if in fact he doesn't have a glorious victory in state court, as soon as the state writ is denied, it's sent to him, his record. Isn't that another way to look at what a reasonable, reasonably diligent inmate would be doing? Yes, Your Honor. But we're also looking at all the stages of the limitations period. This court in Palacios v. Stevens said that inadequate legal representation may not be enough to overcome a lack of diligence throughout the limitations period. Palacios, for example, he hired counsel, but counsel was incompetent and he was very diligent during that time. He wrote him many letters. He even filed a grievance with the state court. But this court noted that it took the petitioner seven months to hire counsel in the front end. And in the back end, he had 13 days remaining in his limitations period. He had 13 days that he could have filed a state writ or he could have filed a protective federal petition. And while this court said that a federal, a skeletal petition is not required, it shouldn't be the only aspect. It should be at least one aspect when considering the entire limitations period. Mr. Jimenez had 960 days where he did not act. During his state habeas application, he could have been researching. He could have been asking for another copy. I mean, if he had written his lawyer several times and his lawyer had not responded to him, and that's what he swore to in his declaration, apparently. Yes. His only specific allegation, again, Your Honor, is after the CCA had denied relief. And the letters that he provided are absent. He had a letter in June of 2012 where he asked what the CCA meant when it received a supplemental record. He didn't know what that meant. He asked and he did not mention once that he did not have a copy of his state habeas application. He's a year into his application proceeding. He supposedly needs another copy and he didn't ask for another one until after the CCA denied relief. Furthermore, he wasn't diligent, contrary to opposing counsel's argument, in his last 43 days. He should not be treated, under Manning v. Epps, he should not be treated less strictly than a pro se petitioner. For example, in Hardy, that petitioner inquired about 11 months into his state habeas application and then the limitation period expired and he filed seven days after getting delayed notice. Mr. Jackson, he's also pro se. He asked 15 months into the state proceeding and then five months after that. And then when his limitation period expired and he received late notice, he then filed 17 days later. Mr. Jimenez had 31 and a half months to get all of his records in order to research his claims and then he had two days left to file. He had a partially filled out form petition, thanks to Mr. Ellison. He had another copy of his state habeas application. He even has the benefit of the mailbox rule and he does not timely file. He even got some suggestion from the district clerk, some implied suggestion, because he asked for an extension and the district clerk led him like a horse to water, stating we cannot extend a case that is on file. In other words, simply take your state habeas claims and transfer them over to that partially filled out form petition. Take advantage of that mailbox rule and file your federal petition. If you need to extend, then you can and you can supplement with whatever records you need to later get. Mr. Jimenez is the only person to blame for his untimely filing. He waited 36 days after getting his state habeas application. That's five weeks. It's not seven days like Hardy. It's not 17 days like Mr. Jackson. This case is more like Manning v. Epps. Mr. Manning let 19 months pass before he took action. This court found that that was not diligent. This court has also stated like in Palacios, you need to be diligent despite inadequate legal representation. The only person to blame is Mr. Jimenez. He had 31 and a half months while his state writ was pending. He had 43 days when the CCA denied LaReef, 37 days when he received the notice of denial, 17 days when Mr. Ellison explained that denial and gave him a partially filled out form petition, and again, he had two days remaining, everything in front of him. He just didn't understand when his limitations period was going to expire and that is not enough. In closing, Mr. Jimenez waited over a month after his deadline. He has not shown an extraordinary case. He has not shown he was reasonably diligent. He filed late not because of Ms. Barone, not because of Mr. Ellison, and not because of TUCJ. He filed late because he didn't understand the limitations period and he was not diligent. It was his own delay. I also wanted to state that in the counsel again was stating that he lost seven and a half months, that he should have really looked at the whole three and a half years. This court looked at the total circumstance and it looked at the largest chunk of that three and a half years. That is that two and a half year period where the state habeas proceeding lasted. It's more than the front end and the back end combined. Two and a half years versus one year. The district court did not. Yes, your honor. If we assume diligence on his part, would you acknowledge that receiving the record from his lawyer three days before the filing time would constitute an extraordinary circumstance because it is a causation of his failure to timely file? If that were the facts in this case, your honor, Judge Dolley, then perhaps, but he was not diligent. He was not asking for the record while it was pending. All I have with that is what was brought to my attention and that is that he had, he alleges in his sworn declaration that he had contacted his lawyer. Did he say that 33 times in the declaration that he had did not respond? That would indicate to me diligence over that period of time. If he, if he persisted in contacting his lawyer, notwithstanding the fact that they went unresponded to. Yes, your honor. Looking at the specific allegations, we're not sure if he was talking about Barone or if he was talking about Ellison. We do know that he did specifically mention that he did not have a state habeas application in August of 2011 at the very beginning of a state habeas proceeding and he did not specifically ask again until after the CCA denied relief. That is why the district court looking at that huge amount of time where he could have been asking and you could still take that as true and still take as true the statement that he repeatedly asked and Ellison finally responded. That could still be true technically while also having these documents showing that he asked for another copy of a state habeas application. The district court would also have to ignore the fact that Mr. Jimenez knew what his claims were. He knew when it was filed. He could have calculated the limitations period and he also had a copy of the state habeas application and lost it, sent it back, whatever the case may have been. The diligence, for example, in Hardy and Jackson was directly related to the impediment itself. They didn't know the status of his state application. Here the impediment itself is the state application not having a copy and not getting it until two days before. The impediment was lifted two days before. He could have timely filed a skeletal petition as this court noted in Palacios, especially when it's coupled with the fact that you have 960 days when he was not asking for that impediment to be lifted. Any sort of diligence during that long period of time, the years that it was pending, would have prevented this scurrying that he had at the back end in the last month or so of his limitations period. All right, Ms. Brodbeck, does that about cover it? That does, Your Honor. I will take that hint and we respectfully request for this court to affirm. I yield my time. Thank you. Ms. Keller, let me ask you a question talking about this, whether he had the record or not during the two plus years the state petition was pending. Is there anything in the record about him being moved around? It's not exactly as if they had a lot of places where prisoners would be losing their legal papers. Does he move some or do we know from this record? I can't answer that off the top of my head, but Your Honor, what I will do is I can look at the returning address that he had on his letters throughout the record, and if I see movement, I can write a supplemental letter to the court letting the court know if he was moved. And Your Honor touches on a great point. I get calls all the time from inmates. All their records are gone when they've been moved. Don't provide any supplemental factual information to us. If we need anything, we'll make contact. Okay. And Your Honor, the two points that I'd like to close with are number one, Holland. The Holland standard is what governs. It is reasonable diligence of a pro se litigant, not max the quote by the Holland court, not maximum feasible diligence. And that's what the government is asking of Mr Jimenez maximum feasible diligence. He had two days here. He had three days here. It's the reasonable diligence of a pro se litigant. That is the standard. And secondly, the district court was required to take as true all of Mr Jimenez's sworn declarations. He had no records. He needed his records. He had not enough time in the prison library, and he was dissuaded over and over again by his state writ counsel. Stop bothering us about getting the records. Stop bothering us about your issues. Your record is too big. It's too hard for us to do this with you pestering us. So please leave us alone, and we promise we will handle your writ and get it timely filed. Do you agree with this, Roderick? And I may have misinterpreted what you said, but the statement I read to you, I have written you multiple letters. You have failed to respond. Is it a fair assessment that we don't know which lawyer he's talking about? I agree. I couldn't. That's why I didn't want to represent it to the court. I can't tell who he's talking about, but the court has to make inferences in favor of Mr Jimenez here. Remember, we're only trying to get our foot in the door to have the substantial nature of the writ considered. So in all inferences should be resolved in favor of Mr Jimenez. Thank you. Unless the court has any other questions, I'll give my time back. Well, I wasn't hinting to both of you, but maybe I was. We do have your argument. We appreciate your help on this. I think one of you, maybe both of you, said in your briefing that you didn't think oral argument was necessary, but and if I'm misremembering this case, you don't need to correct me. But I think this has been helpful. I appreciate your assistance.